**FILED**
JAMES J. WALDRON
APR - 4 2014
U.S. BANKRUPTCY COURT
NEWARK, N.J.
DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

**In Re:**

**BLACKPOOL INVESTORS GROUP, LTD,**

Debtor(s).

**Chapter 11**

**Case No. 12-24599 (RG)**

**OPINION**

APPEARANCES:

LAW OFFICES OF SEYMOUR WASSERSTRUM
BY: NICHOLAS S. HERRON, ESQ.
205 W. LANDIS AVENUE
VINELAND, NJ 08360
*Attorney(s) for Debtor/Debtor-in-Possession*

RALPH F. CASALE & ASSOCIATES, LLC
BY: PATRICK O. LACSINA, ESQ.
DENVILLE LAW CENTER
290 ROUTE 46 WEST
DENVILLE, NJ 07834
*Attorney(s) for City Life Properties, LLC*

OFFICE OF THE UNITED STATES TRUSTEE
BY: PETER J. D'AURIA, ESQ.
ONE NEWARK CENTER, SUITE 2100
NEWARK, NJ 07102

Rosemary Gambardella, Bankruptcy Judge

1

Before the Court is creditor City Life Properties, LLC's ("City Life") Objection to the

Proposed Plan of Blackpool Investors Group, Ltd. ("Debtor") and Debtor's Motion to Set Post-

Petition Interest Rate on City Life's Tax Sale Certificate. A hearing was conducted on October

10, 2013. The following constitutes this Court's findings of fact and conclusions of law.[1]

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

1. Factual Background

Debtor owns and operates a rental property located at 411 Martin Luther King Jr.

Boulevard, East Orange, NJ (the "Property"). Marvin Anhalt, the managing partner, and Harold

Hoffman each hold a 50% interest in Debtor. City Life holds a tax sale certificate against the

Property. The Property is the only interest in real property listed on Schedule A of Debtor's

bankruptcy petition. The "Tax Collector of East Orange" is the only creditor holding a secured

claim in "unknown" amount as reflected on Schedule D of Debtor's bankruptcy petition. The

nature of the lien is described on Schedule D as "property taxes." Schedules E and F reflect that

Debtor has no creditors holding unsecured claims. The Internal Revenue Service has filed a

proof of claim asserting a priority tax claim of $200.00.

2. Procedural Background

On June 6, 2012, Debtor filed a voluntary petition for relief under chapter 11 of the

Bankruptcy Code.

On August 17, 2012, City Life filed a proof of claim based on its tax sale certificate in the

amount of $117,537.03.

On December 4, 2012, Debtor filed its Chapter 11 Plan of Reorganization, ECF #37, and

Disclosure Statement, ECF #38. The plan proposed to pay City Life's secured claim for

---

[1] On December 30, 2013, this Court issued an oral decision in this matter. This written opinion follows.

$117,537.03 "in full over one hundred eighty (180) months at a reduced interest rate of 1.25%." Original Chapter 11 Plan of Reorganization, at 12.

On February 26, 2013, this Court approved the Disclosure Statement and fixed dates for the filing of acceptances and rejections and objections to the plan and the date for the hearing on confirmation of the plan. The City of East Orange Tax Collector, holding a Class Two secured claim in the amount of $21,490.26, filed a ballot dated March 26, 2013 accepting the plan.

### City Life's Objection to the Plan

On January 8, 2013, City Life filed an objection to the plan. ECF #44. On March 26, 2013, City Life again filed an Objection to the Proposed Plan. ECF #55. Among other objections to the plan, which reiterated objections in the January 8, 2013 filing, City Life objected to both the payment period and the interest rate proposed on its secured claim.

First, City Life argued that confirmation should be denied because the proposed period of 15 years is "an unreasonably and prejudicially long payment plan." City Life's Objection at 2.

Second, City Life argued that the plan cannot be confirmed because it proposed to reduce City Life's interest rate to an "unconscionably low" rate of 1.25%. *Id.* City Life cited 11 U.S.C. § 511(a) of the Bankruptcy Code for the proposition that the rate of interest for tax claims shall be the rate determined under applicable nonbankruptcy law and N.J.S.A. § 54:4-67 for the proposition that in New Jersey, "the § 511 rate for tax sale certificates is the statutory 18%." *See* City Life's Objection at 2. City Life also cited to *In re Kopec*, 473 B.R. 597, 603 (Bankr. D.N.J. 2012) (Ferguson, J.) for its ruling that the holder of a tax sale certificate has a tax claim for purposes of § 511. City Life's Objection at 2. City Life asserted that the *Kopec* court "specifically and necessarily overruled *In re Princeton Office Park, L.P.*, 423 B.R. 795 (Bankr. D.N.J. 2010) [(Kaplan, J.)]." City Life's Objection at 2 (citing *Kopec*, 473 B.R. at 603).

3

Therefore, City Life concluded that the Plan is not confirmable because the proposed interest rate on City Life's claim falls far short of the § 511 rate required by *Kopec*. City Life's Objection at 2.

City Life also objected to the plan as not financially feasible as required by 11 U.S.C. § 1129(a)(11). *Id.* at 2. City Life noted that the plan proffers that Debtor has been "advertising the vacant property in an attempt to have the property fully occupied in order to generate income," and responded that mere advertising does nothing for the plan's feasibility. *Id.* Similarly, City Life argued that the plan's feasibility relied on a letter of intent to rent the premises, dated August 15, 2012, which was really a "mere offer from a possible tenant." *Id.* Finally, City Life argued that Debtor's officers' offer to provide contributions to meet the plan obligations is without adequate support. *See id.* at 3.

*Debtor's Response to City Life's Objection*

On April 9, 2013, Debtor filed a Response to City Life's Objection to Confirmation. ECF #58. As to the issue at bar, Debtor argued that a tax certificate holder pays the municipality for the benefit of a statutory lien, extinguishing any tax claim, and is not afforded protection as prescribed by § 511. Debtor's Response, at 2. Therefore, Debtor contended that City Life holds a statutory lien against the subject property and is not afforded the protections under § 511. *See id.*

Debtor asserted that the term "tax claim" is undefined in the Code, and therefore state law determines the interest that City Life holds. *See id.* at 2-3. Debtor asserted that according to New Jersey law, the interest rate on delinquent taxes cannot exceed 18% per annum, and that when those taxes remain unpaid for a period of time, the municipality is granted "a continuous lien on the land" for the delinquent amount as well as for "all subsequent taxes, interest, penalties

4

and costs of collection." *See id.* at 3 (quoting N.J.S.A. § 54:5-6). Debtor continued that the Tax

Sale Law converts that lien into a stream of revenue by encouraging the purchase of tax

certificates on tax-dormant properties. Debtor's Response at 3 (citing *Varsolona v. Breen*

*Capital Servs. Corp.*, 180 N.J. 605, 620 (N.J. 2004); *Simon v. Cronecker*, 189 N.J. 304, 319 (N.J.

2007)). Debtor asserted that the New Jersey Supreme Court in *Simon v. Cronecker* decreed and

understood this "continuous lien" enjoyed by a municipality to be transformed in an effort to

collect delinquent taxes by authorizing municipalities to sell the certificates at public auction on

notice to the property owners and allowing the successful bidder who pays the taxes due on the

property to the municipality to record the certificate as a mortgage on the land. *See* Debtor's

Response at 3 (citing *Simon*, 189 N.J. at 319).

Debtor argued that City Life's reliance on *Kopec* to include these privately purchased

certificates within the realm of "tax claims" is misplaced because *Kopec*'s holding that "the tax

debt is not fully extinguished upon the sale of the tax certificate," 473 B.R. at 602, runs counter

to the analysis of the New Jersey Supreme Court in *Simon*. *See* Debtor's Response at 3-4.

Debtor noted that the Supreme Court held that state law governs the substance of claims in

bankruptcy, citing *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 20 (2000). *See*

Debtor's Response at 4. Debtor continued that in addition, *Kopec's* holding is inconsistent with

public policy, citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center*, 182 N.J.

210, 230 (N.J. 2005) for the proposition that the New Jersey Supreme Court has understood that

tax certificate holders are sophisticated investors that need not the court to protect their interests.

*See* Debtor's Response at 4. Debtor contended that while *Kopec* seems to incorrectly believe

that it was protecting the public interest concerns of the New Jersey legislature, it is not a court's

obligation to advance public policy. *See* Debtor's Response at 4. Debtor asserted that in the tax

sale certificate process, the municipality receives total payment for the delinquent amount and transfers to the private investor/tax certificate holder a lien on the property. *Id.* Debtor continued that unless the lien is paid back with interest, foreclosure proceedings can result. *See id.* Debtor maintained that this interest does not rise to the level of a "tax claim" because the original delinquency amount was paid in full to the municipality; therefore, § 511 cannot apply nor protect the interest rate for tax certificate holders. *See id.*

Because Debtor concluded that City Life does not hold a "tax claim" subject to § 511, Debtor argued that it is free to modify the interest rate of City Life's secured debt to the "reasonable rate" of 1.25% under *Princeton Office Park* and *Till v. SCS Credit Corp.*, 541 U.S. 465, 478-79 (2004). *See* Debtor's Response at 5. Debtor also argued that the fifteen-year duration of the plan period was reasonable and that City Life offered no reason to deny repayment of its claim over the proposed term. *See id.* at 7, 8. Finally, Debtor argued that its members are in a position to repay the claim over the term even if the lease with a national retailer is not consummated, supporting a finding that the proposed plan is feasible and should be confirmed. *See id.* at 8.

On April 16, 2013, the United States Trustee filed a Limited Objection to the plan. ECF #59. The U.S. Trustee asserted that feasibility remains issue because it is unclear how the Debtor will have the necessary cash to confirm the plan and perform it post-confirmation over the period proposed. *See id.* at 2-3.

*Debtor's Amended Plan*

On May 24, 2013, Debtor filed an Amended Plan. ECF #62. The Amended Plan proposed to pay City Life's claim of $117, 538.08 in full over a term of 120 months at a reduced

interest rate of 3.5%, resulting in monthly payments of approximately $1,162.28 over 10 years. Debtor's Amended Plan, at 12.

<u>*City Life's Supplemental Objection*</u>

On May 29, 2013, City Life filed a Supplemental Objection to Confirmation of Plan. ECF #62. City Life noted that Debtor had rejected its May 27, 2013 proposal that its claim be paid over a term of 60 months at a reduced interest rate of 15.0%, resulting in monthly payments of approximately $2,796.20 over five years. City Life's Supplemental Objection, at 2. City Life stated that it objected to the Amended Plan for the reasons stated in its March 25, 2013 Objection and for two additional reasons.

First, City Life argued that Debtor will have the sufficient financial ability to repay its tax sales lien at 15.0% over five years once the lease agreement with Dolgencorp, LLC is executed based on the terms of the lease agreement which state that Debtor will be receiving a minimum of $11,375.00 for the first five years with Dolgencorp responsible for the payment of future municipal taxes. *See id.*

Second, City Life argued that "as a general policy, there would be a chilling effect on tax sale auctions and the municipality if the bargained-for interest of winning bidders would be greatly reduced in Bankruptcy." *Id.*

<u>*Debtor's Brief in Support of Motion to Set Post-Petition Interest Rate*</u>

On September 23, 2013, Debtor Filed a "Brief in Support of Motion to Set Post-Petition Interest Rate". ECF #72. Debtor sought a reduction of the post-petition interest rate from 18% as proposed in City Life's proof of claim to 4% annually,[2] asserting that § 511 is not applicable

---

[2] There is some inconsistency as to the exact post-petition interest rate sought. Debtor proposed "a more reasonable four percent annually" in its Facts section. Debtor's Brief, at 2. However, Debtor described the proposed interest rate as "four percent (3.5%) (3.25% prime rate plus .25% premium)" in its Conclusion. *Id.* at 17.

because City Life does not hold a claim for taxes and therefore the appropriate measure for interest should be in accordance with *Till. See* Debtor's Brief at 2.

First, Debtor argued that § 511 is not applicable here. Debtor asserted that the start of any statutory interpretation must begin with the language of the statute itself. *Id.* (citing *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989)). Debtor contended that City Life's interest in Debtor's property is a statutory lien and not a tax claim or a tax lien. *See* Debtor's Brief at 2. Debtor asserted that a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," citing 11 U.S.C. § 101(5), while a "statutory lien" is a "lien arising solely by force of a statute on specified circumstances or conditions ... but does not include security interest or judicial lien," citing 11 U.S.C. § 101(53). *See* Debtor's Brief at 2-3. Debtor argued that the source and/or debt supporting the lien is not for taxes, but rather for a redemption of funds advanced on behalf of a debtor. *See* Debtor's Brief at 3.

Debtor noted that whether a tax certificate holder's claim is a "tax claim" or "tax lien" under § 511 is unresolved in the District of New Jersey, with one line of cases, including *Princeton Office Park,* 423 B.R. at 804-06, and *In re Burch*, 2010 WL 2889520, at *2-4 (Bankr. D.N.J. July 15, 2010) (Wizmur, C.J.), holding that the claim is not protected under § 511, and another line of cases, including *Kopec*, 473 B.R. at 599, and *In re Curry*, 493 B.R. 447, 453 (Bankr. D.N.J. 2013) (Winfield, J.), holding the opposite. *See* Debtor's Brief at 3.

Debtor asserted that § 511(a), revised in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), intended to provide for a uniform treatment of tax claims, though it did not define the term "tax claim." *See id.* at 3-4. Therefore, Debtor contended that this Court must turn to state law to determine the interest that City Life

8

holds. *Id.* at 4. Debtor urged that a review of state law shows that a tax certificate holder enjoys a statutory lien for redemption which is not supported by delinquent taxes. *See id.*

Debtor noted that prior to 1854, taxes on real property operated not as a lien on the land but instead were enforced like personal property taxes. *See id.* In 1854, property taxes were made a lien on the land collectible either by distraint or by the sale of the land. *See id.* at 4-5 (citing *Bea v. Turner & Co.*, 115 N.J. Eq. 189, 191 (N.J. Ch. 1934)). Debtor noted that in 1918, New Jersey enacted the Tax Sale Law, N.J.S.A. §§ 54:5-1 to-137, as part of a process to enhance the collection of taxes. *See* Debtor's Brief at 5 (citing *Bron v. Weintraub*, 42 N.J. 87, 91 (N.J. 1964)). Debtor also noted that when municipal taxes are delinquent for the period stated by statute, a "lien" arises on the tax-assessed land which is enforceable by the municipality as prescribed by the statute. *See* Debtor's Brief at 5.

Debtor asserted that the selling of a tax sale certificate does not act as an outright conveyance to the purchaser, but acts only as a lien on the premises and "conveys a lien interest of the taxing authority." *See* Debtor's Brief at 5 (quoting *Chelsea Laundry Co. v. Toscano*, 14 N.J. Super. 496, 500 (N.J. Super. Ct. Ch. Div. 1951)). Debtor continued that the lien interest is not a conveyance of the delinquent taxes, which are satisfied by the tax certificate holder, and furthermore is subordinate to the property owner's statutory right of redemption. *See* Debtor's Brief at 5 (citing *Chelsea Laundry*, 14 N.J. Super. at 500; *Manning v. Kasdin*, 97 N.J. Super. 406, 417 (N.J. Super. Ct. App. Div. 1967), *cert. denied*, 51 N.J. 182 (N.J. 1968)).

Debtor noted that a tax collector sells the lien at an auction and the successful bidder acquires the lien with title and a certificate of sale known as a tax sale certificate. *See* Debtor's Brief at 5-6 (citing N.J.S.A. §§ 54:5-19, 5-31, 5-42, 5-46). Debtor continued that the statute conveys to a bona fide holder the ability to assess up to 18% per annum as an incentive to selling

9

these certificates. *See* Debtor's Brief at 6 (citing N.J.S.A. § 54:5-32). Debtor noted that until the right of redemption is barred, all subsequent taxes, assessments and municipal charges are assessed in the name of the property owner. *See* Debtor's Brief at 6 (citing N.J.S.A. § 54:5-39). Further, "[t]he certificate vests the purchaser with an inchoate right or interest and gives the purchaser the right to foreclose the equity of redemption pursuant to the statutory scheme." Debtor's Brief at 6 (citing *Gasorek v. Gruber*, 126 N.J. Super. 511, 515 (N.J. Super. Ct. App. Div. 1974)). Debtor cited *Varsolona v. Breen Capital Servs. Corp.* for the proposition that:

> The inchoate interest consists of three rights: the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold; the right to redeem from the holder a subsequently issued tax sale certificate; and the right to acquire title by foreclosing the equity of redemption of all outstanding interests, including that of the property owner.

180 N.J. at 619. Debtor asserted that this interest is limited and subordinate to the rights of the municipality and property owner. Debtor's Brief at 6. Debtor concluded that as the certificate holder does not enjoy the same rights/privileges of the municipality, nor is its underlying debt classified as a delinquency of taxes, the certificate holder does not hold a tax claim. *See id.*

Next, Debtor argued that § 511(a) is not applicable because City Life holds a statutory lien for redemption and not one for taxes, since there was no transfer of a tax claim and the taxes were paid in full at the conclusion of the sale. *See id.* at 6-7 (citing N.J.S.A. § 54:5-31; *I.E.'s, L.L.C. v. Simmons*, 392 N.J. Super. 520, 523-24 (N.J. Super. Ct. Law Div. 2006) *revised*, F-13336-03, 2007 WL 1453484 (N.J. Super. Ct. Law Div. Apr. 9, 2007)). Debtor asserted that the tax sale certificate holder's rights are significantly more restricted than those of the municipality, citing *Princeton Office Park*, 423 B.R. at 804. Debtor's Brief at 7. Debtor asserted that in that case, the court held that a tax sale certificate holder did not have a tax claim or tax lien subject to

§ 511, noting the distinct limitations on tax sale certificate holders, and that upon redemption the debtor pays the third party the redemption amount, not the taxes owed. *See* Debtor's Brief at 7 (citing *Princeton Office Park*, 423 B.R. at 804; N.J.S.A. § 54:5-58).

Debtor continued that New Jersey courts have clearly held that the purchase of a tax sale certificate by a third party, prior to a taxing district's motion to dismiss, satisfies the tax payment requirement. *See* Debtor's Brief at 8 (citing N.J.S.A. § 54:3-47; *Ramos v. City of Passaic*, 19 N.J. Tax 97 (N.J. Tax Ct. 2000); *Echelon Glen Coop., Inc. v. Voorhees Twp.*, 275 N.J. Super. 441 (N.J. Super Ct. App. Div. 1994), *cert. denied*, 138 N.J. 272 (N.J. 1994); *Freehold Office Park, Ltd. v. Twp. of Freehold*, 12 N.J. Tax 433 (N.J. Tax Ct. 1992)). Debtor contended that an argument that taxes have not been advanced on behalf of the debtor is contrary to this case law. *See* Debtor's Brief at 8.

Debtor also asserted that New Jersey law does not pass or assign a municipality's tax claim to a tax certificate holder. *Id.* City Life does not have any of the levy, assessment, or collection powers limited to governmental entities, and City Life is prohibited from directly collecting redemption funds from a debtor, which must always be paid to a governmental entity. *See id.* (citing N.J.S.A. § 54:5-57).

Next, Debtor argued that this Court should not be guided by *Ramos v. City of Passaic* as urged by City Life, which observed that:

> "Delinquency" means the sum of all taxes and municipal charges due on a given parcel of property covering any number of quarters or years. The property shall remain delinquent, as defined herein, until such time as all unpaid taxes, including subsequent taxes and liens, together with interest thereon shall have been full paid and satisfied. The delinquency shall remain notwithstanding the issuance of a certificate of sale [....]

*Ramos*, 19 N.J. Tax at 100 (quoting N.J.S.A. § 54:4-67). Debtor asserted that New Jersey enacted N.J.S.A. § 54:4-67 as a way to prevent property owners from filing appeals when they

were delinquent on their taxes even if the municipality sold those delinquent taxes at an auction. Debtor's Brief at 9 (citing *Ramos*, 19 N.J. Tax at 106). Debtor continued that the court in *Ramos* noted that when a municipal tax collector receives a redemption payment, he or she is obligated to remit all redemption monies to the purchaser of the certificate being redeemed. Debtor's Brief at 9 (citing *Ramos*, 19 N.J. Tax at 110). Therefore, Debtor asserted that the municipal treasury receives no benefit whatsoever from the redemption. Debtor's Brief at 9 (citing *Freehold Office Park*, 12 N.J. Tax at 442; N.J.S.A. § 54:5-57). Debtor asserted that in examining the constitutionality of N.J.S.A. § 54:4-67 as to whether the State could deny a property owner the ability to appeal a tax assessment even when a third party had paid property taxes on behalf of the property owner and was given a tax sale certificate, *Ramos* held that the basic mechanics of N.J.S.A. § 54:4-67 made no sense and ultimately that the statute was unconstitutional as violating the Due Process Clause. *See* Debtor's Brief at 9-10 (citing *Ramos*, 19 N.J. Tax at 110). Debtor also contended that *Ramos* solidified the New Jersey Supreme Court's view that the issuance of a tax sale certificate satisfied delinquent taxes owed to the municipality. *See* Debtor's Brief at 10-11 (citing *Ramos*, 19 N.J. Tax at 114; *see also U.S. Land Resources v. Borough of Roseland*, 24 N.J. Tax 484, 492 (N.J. Tax Ct. 2009) ("As noted in [*Farrell v. City of Atlantic City*, 10 N.J. Tax 336 (N.J. Tax Ct. 1989)], the municipality has chosen to make itself whole by a tax sale, and the payment received constitutes the full payment of the taxes owed for the period in question.")

Debtor argued that *Kopec* fails to consider that N.J.S.A. § 54:4-67's provision noting a continuous "delinquency" notwithstanding the certificate issuance was declared unconstitutional and is no longer valid, casting doubt on the analysis and holding. *See* Debtor's Brief at 11. *Curry* in turn relied upon both *Kopec* and N.J.S.A. § 54:4-67's definition of a continuous

12

"delinquency." Debtor's Brief at 11. Therefore, Debtor contended that the continued reliance on this statute is a "sandy foundation" which cannot support the finding that a tax certificate holder holds a tax claim. *See id.* Debtor asserted that, on the other hand, *Ramos* demonstrates that the tax sale certificate holder holds a lien which is satisfied via redemption funds and that redemption is not a means to cure delinquent taxes because the delinquent taxes were advanced and already satisfied in full. *See id.* at 11-12. Debtor thus concluded that redemption is basically the repayment of an investment made by the third-party purchaser. *See id.* at 12.

Debtor asserted that *Curry*'s inquiry as to how a lien can continue to exist in the absence of a debt for taxes can be addressed by examining the holdings in *Ramos* and *Simon* that the taxes have been paid at the time of the sale of a tax certificate of a third party. *See* Debtor's Brief at 12. Debtor contended that since the taxes are paid, the debt for taxes cannot exist; rather, the lien that is created is a statutory lien for redemption based on the extension of funds paid on behalf of the debtor, not based on the taxes. *See id.* (citing *Simon*, 189 N.J. at 319). Debtor also pointed out that *Curry* did not address *Ramos*' holding that the term "delinquency" as noted in N.J.S.A. § 54:4-67 was declared unconstitutional, and neither *Curry* nor *Kopec* addressed *Simon*'s explanation of how the tax sale system works and the rights of a tax certificate holder. *See* Debtor's Brief at 12-13. Debtor asserted that *Simon* reflects that in the context of a tax foreclosure/redemption process, "present tax certificate holders [would] still receive the benefit of their bargain: '[R]eimburse[ment] for all the monies they advanced, with interest at the rates established at the original tax sales.'" Debtor's Brief at 12-13 (quoting *Simon*, 189 N.J. at 316) (internal citations omitted).

Debtor also challenged *Kopec*'s finding that a lien is dependent on the existence of a debt, which cited *Satsky v. United States*, 993 F.Supp. 1027, 1029 (S.D. Tex. 1998). Debtor

highlighted that the lien in *Satsky* was a Texas statutory lien levied on real property for hospital/medical services, while here the lien was transformed at the time of the tax sale when the underlying debt changed from being based on the outstanding taxes to being based on redemption for funds advanced on behalf of the property owner. *See* Debtor's Brief at 13. Debtor asserted that if the underlying debt had stayed the same, an assignment of rights would have been appropriate. *Id.* at 13-14 (citing *In re Cortner*, 400 B.R. 608, 613-14 (Bankr. S.D. Ohio 2009)). Debtor contended that instead, "New Jersey law provides that the selling of a tax certificate is a mechanism that transfers the outstanding taxes to a steady [stream] of revenue for the municipalities," providing the certificate holder with a statutory lien which acts as an investment for the funds advanced on behalf of the property owner. *See* Debtor's Brief at 14. Finally, Debtor asserted that *Simon* also addressed *Kopec*'s public policy concerns:

> We are presented with commercial competitors, one claiming to advance society's interest in collecting taxes from tax-dormant properties and the other claiming to champion the right of owners to freely sell their properties. These sophisticated investors are clearly capable of looking after their own interests.

*Simon*, 189 N.J. at 330. Therefore, Debtor insisted that the New Jersey Supreme Court's interpretations of the law supersede *Kopec* and *Curry*. *See* Debtor's Brief at 14.

In light of its position that § 511 does not determine the interest rate applicable to City Life's secured claim because it is not a "tax claim" or a "tax lien", Debtor next argued that the applicable interest rate is controlled by *Till*. *See* Debtor's Brief at 15. After summarizing the Supreme Court's decision in *Till*, Debtor discussed the circumstances of the estate, the nature of the security and the duration and feasibility of the plan to determine that an interest rate of 3.25% prime rate plus a .25% premium would be more than adequate to compensate for the limited risk posed to City Life. *See id.* at 15-18.

*City Life's Brief in Opposition to Debtor's Motion to Set Post-Petition Interest*

14

On October 7, 2013, City Life filed a Brief in Opposition to Debtor's Supplemental Brief. ECF #74. City Life argued that the weight of binding authority and persuasive case law concludes that a tax sale certificate is a "tax claim" subject to the applicable non-bankruptcy interest rate. City Life's Opposition, at 1.

City Life first argued that the two most recent District of New Jersey cases interpreting § 511 held that tax sale certificates are tax claims, as had numerous decisions from other jurisdictions. *See id.*

Beginning with *Kopec*, City Life asserted that the court used a three-prong analysis to conclude that tax sales certificates are afforded § 511 protection. City Life's Opposition at 2. City Life asserted that the court first found that the relevant New Jersey statutory provisions were at odds with *Princeton Office Park* and *Burch* because those cases were based on the "faulty premise" that the "tax sale extinguishes the debt and a new debt comes into existence." *See* City Life's Opposition at 2 (citing *Kopec*, 473 B.R. at 601-02). City Life further asserted that the *Kopec* court found that N.J.S.A. § 54:5-43's language governing refunds to tax sale certificate purchasers provides that a municipality will provide a refund when the purchaser assigns back "the certificate of sale and all his interest in the tax" and debunks *Princeton Office Park* and *Burch* because "the claim of the holder of a tax sale certificate is based on the underlying tax." *See* City Life's Opposition at 2 (citing *Kopec*, 473 B.R. at 601). City Life noted that *Kopec* observed that N.J.S.A. § 54:4-67(c) states a "[debtor's tax] delinquency shall remain nothwithstanding the issuance of a certificate of sale," therefore explicitly holding that a tax debt "is not fully extinguished." *See* City Life's Opposition at 2 (citing *Kopec*, 473 B.R. at 601-02). Second, City Life asserted that the court in *Kopec* was "uncomfortable with the contrived position of [the aforesaid cases] that a brand new debt, completely divorced from the

15

underlaying debt, arises upon the purchase of a tax sale certificate." *See* City Life's Opposition at 2 (citing *Kopec*, 473 B.R. at 601). Last, City Life asserted that *Kopec* determined that tax sale certificates are "tax claims" that can run back to non-governmental units. *See* City Life's Opposition at 3. City Life noted that *Kopec* cited to Congress' use in § 511 of the more expansive term "creditor" rather than "governmental unit" in support of the conclusion that Congress intended for third parties to be able to hold tax claims. *See id.* at 3 (citing *Kopec*, 473 B.R. at 600). City Life also noted that *Kopec* found that Congress' choice of the term "tax claim," which is more inclusive than "tax," supported the court's conclusion that § 511 allowed for "creditors" such as City Life to hold "tax claims" such as tax sale certificates. City Life's Opposition at 3 (citing *Kopec*, 473 B.R. at 603).

Next, City Life argued that *Curry* also ruled that a tax sales certificate is a tax claim under § 511. City Life's Opposition at 3. City Life asserted that *Curry* reviewed cases construing New Jersey's Tax Sale Law and held that "the lien interest of the taxing authority is conveyed to the purchaser of a tax sale certificate." *See* City Life's Opposition at 4 (citing *Curry*, 493 B.R. at 450) (itself citing *Savage v. Weissman*, 355 N.J. Super. 429, 436 (N.J. Super. Ct. App. Div. 2002); *Twp. of Jefferson v. Block 447A, Lot 10*, 228 N.J. Super. 1, 4 (N.J. Super. Ct. App. Div. 1988)). City Life also asserted that the court in *Curry* observed that from initiation to redemption or foreclosure, "the taxing authority maintains an active role in [every step of] the sale process," bolstering the holding in *Kopec* that the tax debt is not satisfied by the tax sale certificate even when the tax sale certificate holder has initiated foreclosure. *See* City Life's Opposition at 4 (citing *Curry*, 493 B.R. at 451).

City Life continued that other jurisdictions have interpreted tax claims under § 511 to include tax sale certificates. City Life's Opposition at 4 (citing *In re Kizzee-Jordan*, 626 F.3d

239, 246 (5th Cir. 2010); *In re Meyhoefer*, 459 B.R. 167, 172 (Bankr. N.D.N.Y. 2011); *Cortner*, 400 B.R. at 612).

City Life contended that because § 511 states that the interest rate for the tax sale certificate is governed by non-bankruptcy law, it is entitled to the rate set out in N.J.S.A. § 54:4-67 which states, in pertinent part, "[t]he rate so fixed shall not exceed 8% per annum on the first $1,500.00 of the delinquency and 18% per annum on any amount in excess of $1,500.00 to be calculated from the date the tax was payable until the actual payment to the tax collector is made." *See* City Life's Opposition at 4-5.

Finally, City Life argued that Debtor's reliance on *Ramos* and *Simon* is misplaced. First, City Life rebutted Debtor's assertion that *Ramos* held that "delinquency" as defined in N.J.S.A. § 54:5-67 is unconstitutional, asserting that *Ramos* limited the due process implications of that provision to a defendant's ability to appeal a tax assessment conditioned on payment of the very tax being appealed. *See* City Life's Opposition at 5 (citing *Ramos*, 19 N.J. Tax at 112). In addition, City Life asserted that *Simon* is irrelevant because that case was limited to the rights of interveners in tax sale certificate foreclosures. *See* City Life's Opposition at 5. City Life thus concluded that Debtor's citations to *Ramos* and *Simon* do little to advance the § 511 discussion. *Id.*

*October 10, 2013 Hearing:*

On October 10, 2013, this Court conducted a hearing on the instant motion.

At the hearing, Debtor's counsel began by acknowledging the division among the bankruptcy courts in this jurisdiction as to whether or not a tax certificate holder is protected under § 511. Debtor's counsel stated that *Curry* essentially adopted *Kopec*'s rationale in

concluding that § 511 included tax certificate holders, and therefore Debtor's argument would focus mainly on *Kopec*.

Debtor's counsel argued that *Kopec*'s first reason for why § 511 protects tax certificate holders, that § 511 does not distinguish between a governmental entity and a third party, was dispelled by the court's finding in *Burch* that state law is determinative. Thus, Debtor did not contend that § 511 is limited to government entities.

Debtor's counsel asserted that the issue is what claim a tax certificate holder holds; that is, what its right to payment is. Debtor's counsel then addressed *Kopec*'s focus on N.J.S.A. § 54:5-43, which concerns the setting aside of a tax sale, and N.J.S.A. § 54:4-67's definition of "delinquency." First, Debtor's counsel contended that the setting-aside provision does not support the conclusion that a tax sale certificate holder's debt is for taxes. As noted in *Burch*, the court in *Freehold Office Park Ltd. v. Twp. of Freehold* found that if a party seeks to vacate a tax sale, that party has to pay the money up front, though that money does not go to the municipality. Debtor's counsel continued that the municipality merely sends the money to the tax certificate holder because the municipality has already been paid by the tax certificate holder. Therefore, Debtor's counsel contended that there is no longer a tax debt, though there is a lien. In response to this Court's inquiry as to what that lien then attaches to, Debtor's counsel responded that the lien attaches to the property, but that it is a statutory lien for redemption. He stated that the statute is clear about what happens when the property is redeemed, and that the redemption is for monies paid on behalf of the tax certificate holder for the benefit of the property holder.

Second, Debtor's counsel contended that the definition of "delinquency" in N.J.S.A. § 54:4-67 should not be used because the court in *Ramos* held that this provision was unconstitutional as applied to the eligibility of a property owner to appeal delinquent taxes. He

18

argued that because the very purpose of that provision was to prohibit taxpayers from appealing without first paying the delinquency, notwithstanding payment to the municipality by the tax certificate holder, it should not be considered at all.

Next, this Court asked Debtor's counsel to respond to the conundrum highlighted in *Kopec* of how a lien could exist without a concomitant debt, or if a debt did exist, how that debt was different from the tax debt because the statute clearly gives City Life a lien. Debtor's counsel responded that there is a debt, but it is instead for the monies advanced by the tax certificate holder, plus interest and costs, for the benefit of the property owner. To highlight the difference, Debtor's counsel noted that a tax certificate holder must record its lien and is not allowed to collect taxes or its redemption, but instead must go through the taxing authority to be paid. Therefore, unlike *Kopec*, Debtor's position is that the tax debt is fully extinguished upon the sale of the tax certificate.

Debtor's counsel also argued that the provisions cited in *Kopec* find no support in New Jersey case law. Further, he asserted that cases cited in *Burch*, which discussed at least one of provisions mentioned in *Kopec*, cite New Jersey law for the proposition that the taxes are paid. Debtor's counsel continued that the New Jersey Supreme Court in *Simon*, in its discussion of how the tax sale certificate law works, said that the successful bidder of a tax sale certificate agrees to pay the municipality the taxes due on the property. Thus, if the tax sale certificate holder does pay those taxes, Debtor's counsel concluded that you cannot have the existence of a debt that has been satisfied. Debtor's counsel argued that *Simon*, *Freehold Office Park*, and *U.S. Land Resources v. Borough of Roseland* hold that when looking at N.J.S.A. § 54:5-43, the taxes have been paid and satisfied. Therefore, Debtor's counsel argued that the concept that the tax debt somehow remains alive is at odds with the great weight of New Jersey case law.

19

Finally, Debtor's counsel argued that *Kopec*'s reliance on congressional intent goes beyond what most courts would look at in the hierarchy of rules of statutory interpretation because one looks to plain language first. Debtor's counsel asserted that while Congress may have had one intention, there was an unintended consequence because of state law. He stated that while that may be to the detriment of the creditor, that issue is most properly addressed by Congress or the state legislature, not the courts.

City Life's counsel argued first that Debtor's interpretation of "tax claim" offends the bedrock principle that the law follows the most direct and simple approach in reaching its conclusion. City Life's counsel contended that the *Kopec* and *Curry* courts, on the other hand, did follow the most direct approach in siding with City Life's definition of "tax claim." He noted that § 511 uses the term "creditor" instead of the more narrowly-defined "municipal entity." Therefore, he concluded that third-party entities have the ability to possess "tax claims," which he argued includes tax sale certificates in New Jersey. He argued that, as the *Kopec* and *Curry* courts found, a tax sale certificate is a right to payment based on taxes. He distinguished this direct approach from that of *Princeton Office Park* and *Burch*, which take, in City Life's view, the "contorted" position that a lien exists without a concomitant debt. City Life's counsel argued that even as a statutory lien, it flows from the property taxes. Therefore, following the expansive construction of § 511, Congress intended to include tax sale certificates in the definition of "tax claim."

In response to this Court's request to address the New Jersey Tax Sale Law, City Life's counsel argued that the plain language of the statutes cited in *Kopec* indicate that a tax debt still exists. He noted that N.J.S.A. § 54:5-43 states that a refund to a tax sale certificate purchaser will only issue upon the purchaser assigning back to the municipality the certificate of sale and

all his interest in the tax. City Life's counsel argued that this indicates that there is still a tax debt. Similarly, he argued that N.J.S.A. § 54:4-67(c) indicates that a tax delinquency shall remain notwithstanding the issuance of a certificate of sale.

City Life's counsel continued that, contrary to Debtor's position, *Ramos* can be relied on with respect to the definition of a tax claim under § 511 and New Jersey law. He also argued that the municipality is involved, if not in control, during the entire process, which was the position adopted in *Curry*. For example, City Life's counsel noted that if a tax sale foreclosure begins, the property owner cannot settle with the tax sale certificate holder and instead must deal with the municipality.

Second, City Life's counsel argued that the interpretation adopted in *Princeton Office Park* and *Burch* frustrates the legislative purpose of the state tax law, which is simply to collect taxes. He asserted that there would be a chilling effect if a debtor is shielded from state law by filing bankruptcy, and further, that there is no case interpreting § 511 that sides with *Princeton Office Park* and *Burch*. City Life's counsel noted that the recently-decided case of *In re Debenedetto*, 2013 WL 3831062, at \*2-\*3 (Bankr. N.D.N.Y. July 23, 2013) cited to *Princeton Office Park* and *Kopec* and ruled that the creditor in that case held a tax claim under New York law.

Finally, City Life's counsel argued that the sophistication of the parties in this situation should not be a consideration. He asserted that whether the tax sale certificate purchaser is a commercially-sophisticated person or a casual investor, the purchaser is going to reasonably rely on the Tax Sale Law.

Responding to City Life's arguments, Debtor's counsel emphasized that the Fifth Circuit's decision in *In re Kizzee-Jordan* is of limited assistance as it involved Texas law. *See*

21

626 F.3d at 245 (citing Tex. Tax Code § 32.065(c)). Similarly, Debtor's counsel argued that the decisions in *In re Cortner*, which analyzes Ohio Rev. Code §§ 5721.30–5721.46, and *In re Meyhoefer*, which analyzes N.Y. Real Prop. Tax Law §§ 1100–1194, are not persuasive because those statutory provisions are different from New Jersey's law. Therefore, although bankruptcy courts in other states may hold that § 511 extends its protection to third parties, even *Kopec* recognized that these cases are not very helpful because the state law is not substantially similar.

Next, Debtor's counsel responded that N.J.S.A. § 54:4-67 cannot be used for one purpose while ignoring what it was crafted for. He argued that one cannot ignore that a tax court in New Jersey held that that provision was unconstitutional while nevertheless arguing that it supports the proposition that the debt underlying a tax certificate is still a tax.

When asked by this Court whether N.J.S.A. § 54:5-43, which has not been ruled unconstitutional in any way, adds to the discussion at bar, Debtor's counsel argued that it does not in light of *Freehold Office Park*'s discussion of how the Tax Sale Law functions as a whole. Debtor's counsel asserted that the municipality is merely a strawperson filtering the money and paying it to the lienholder. He noted that though the municipality gets the opportunity to relist the property for sale, not one penny is added to the city coffers. He continued that, as noted in *Freehold Office Park*, if no money is added to the coffers, it is inescapable that the taxes have been satisfied. Debtor's counsel thus concluded that the statute functions to satisfy the redemption of the tax certificate holder.

Finally, Debtor's counsel rebutted the public policy argument that Debtor's position could have a chilling effect on the purchase of tax certificates, arguing that if those chilling effects result from a plain reading of the statute, the legislature is in the best position to remedy that. He noted that Ohio Rev. Code § 5721.30–5721.46 and Tex. Tax Code § 32.065(c) provide

for the assignment of a tax claim, and that if claims were similarly assignable in New Jersey, Debtor would not be able to argue that § 511 does not apply. Debtor's counsel concluded that that was one of the critical distinctions between those states and New Jersey.

City Life's counsel responded that *Ramos* was decided in 2000, and that the legislature had not acted to modify the delinquency definition in the 13 years since. He argued that this supports limiting *Ramos*' finding of unconstitutionality to the ability to appeal taxes. Finally, City Life's counsel argued that assuming in the alternative that the tax debt is satisfied, a tax sale certificate still falls under a tax claim for § 511 purposes because it is still a right to payment with its origin in the tax sale certificate system. He re-emphasized that the municipality is very much involved in the lifetime of the tax sale certificate and that § 511's definition of "tax claim" should be interpreted broadly.

LEGAL STANDARDS

I. Statutory Language

    A. 11 U.S.C. § 511(a), Rate of Interest on Tax Claims

    Section 511(a) of the Bankruptcy Code provides:

> If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

11 U.S.C. § 511(a).

    B. N.J.S.A. § 54:4-67(a) Interest for Delinquency on Taxes or Assessments

    In New Jersey, the applicable non-bankruptcy law for determining the rate of interest on an allowed tax claim is N.J.S.A. § 54:4-67(a). It provides:

> [....]The governing body may also fix the rate of interest to be charged for the nonpayment of taxes, assessments, or other municipal liens or charges, unless otherwise provided by law, on or before the date when they would become delinquent, and may provide that no interest shall be charged if payment of any installment is made within the

23

tenth calendar day following the date upon which the same became payable. *The rate so fixed shall not exceed 8% per annum on the first $1,500.00 of the delinquency and 18% per annum on any amount in excess of $1,500.00,* to be calculated from the date the tax was payable until the date that actual payment to the tax collector is made.

N.J.S.A. § 54:4-67(a) (emphasis added).

II. Third Circuit Case Law

The *Princeton Office Park* decision was affirmed by the District Court and is currently on appeal to the Third Circuit Court of Appeals. On May 1, 2012, the New Jersey Supreme Court accepted the following question of law certified to it from the Third Circuit pursuant to Rule 2:12A: "Whether, under New Jersey law, a tax sale certificate purchaser holds a tax lien?" *See Princeton Office Park, LP v. Plymouth Park Tax Services, LLC*, 214 N.J. 336, 336-37 (N.J. 2012). The state Supreme Court heard oral arguments in that case on October 21, 2013 and the case was reargued on February 3, 2014. The state Supreme Court has not yet decided the question as of the date of this Opinion. Thus, there is currently a split in authority in this jurisdiction as to whether a tax sale certificate is a "tax claim" under § 511(a).

A. *In re Princeton Office Park, L.P.* (2010)

*In re Princeton Office Park, L.P.*, 423 B.R. 795, 797 (Bankr. D.N.J. 2010) (Kaplan, J.) held that a tax sale certificate holder is not the holder of a "tax claim" within the meaning of § 511(a), but instead acquires only a lien on the property owner's real estate which may be redeemed by payment the statutory redemption amount. Because the tax sale certificate was not a tax claim entitled to the anti-modification protections of § 511(a), the interest rate to be applied to the tax sale certificate would be calculated in accordance with the Supreme Court's formula in *Till*. *See Princeton Office Park*, 423 B.R. at 797, 799. The matter came before the court on a motion filed by the debtor seeking an order fixing the claim amount, interest rate, and payment

terms for a proof of claim filed by the tax sale certificate holder in contemplation of confirmation of the debtor's Chapter 11 plan. *See id.* at 797, 798.

In so finding, the court noted that "[a] tax sale certificate is not an outright conveyance. It creates only a lien on the premises and conveys the lien interest of the taxing authority." *Id.* at 800 (quoting *Savage*, 355 N.J. Super. at 436). The court acknowledged that the term "tax claim" must include a "tax lien." *Princeton Office Park*, 423 B.R. at 801. However, the court referred to 11 U.S.C. § 724(b)'s description of a tax lien as "[p]roperty in which the estate has an interest and that is subject to a lien that is not avoidable under this title…and that secures an allowed claim for a tax." *Id.* From that description, the court concluded that for a creditor to hold a "tax lien," the holder must first possess an allowed claim for "a tax." *Id.* The tax claim itself is not transferred as the taxes are paid in full at the conclusion of the tax sale. *See id.* at 804 (citing N.J.S.A. § 54:5-31). Therefore, all that the creditor holds is a lien against the property that can be redeemed by the debtor remitting to the creditor the amount the creditor had paid to the municipality for the debtor's unpaid taxes, plus interest. *See Princeton Office Park*, 423 B.R. at 804. The court observed that because the origin of the claim arose from the creditor's satisfaction of the debtor's outstanding tax obligation to the municipality *in full*, the creditor's claim was never for taxes but rather for the redemption price owed as a result of the creditor having paid off the debtor's municipal tax obligation. *See id.* at 805.

Absent proof of assignment or subrogation of the municipality's rights to the creditor, the court found that the purchaser of a tax sale certificate in New Jersey acquires a statutory lien claim, not a tax claim, and is therefore not entitled to the protection of § 511(a). *Id.* The court concluded by finding that the *Till* formula approach, whereby the rate of interest is set by using the national prime rate as the starting point adjusted accordingly for the risk of nonpayment,

governs the calculation of the interest rate to be applied to the creditor's claim. *Id.* at 808; *see Till*, 541 U.S. at 479.

B. *In re Burch* (2010)

*In re Burch*, 2010 WL 2889520, at *1 (Bankr. D.N.J. July 15, 2010) (Wizmur, C.J.) found that the creditor, who held a tax sale certificate, was not the holder of a tax claim under state law for the purposes of § 511, and therefore granted the Chapter 13 debtors' motion to modify the interest rate to be paid through their plan on the creditor's claim. *See id.* at *1. The creditor had filed an objection to the debtors' proposed plan, claiming that the plan failed to address the creditor's interest as a secured creditor and to provide it with the required 18% statutory interest due over the life of the plan. *See id.* In response, the debtors moved to reduce the post-petition interest rate sought by the creditor from 18% to 5%, relying upon the court's decision in *Princeton Office Park. See Burch*, 2010 WL 2889520 at *1-*2.

The court in *Burch* agreed with *Princeton Office Park*, finding that under the New Jersey Tax Sale Law, the municipality receives full payment for its outstanding taxes and the purchaser receives a lien securing the amount paid plus interest. *See Burch*, 2010 WL 2889520 at *4. The lien secures the obligation of the property owner to repay the purchaser, but the tax debt has been satisfied. *Id.* The court concluded that the municipality's tax claim is extinguished upon the purchase of the tax sale certificate, leaving only a redeemable debt due from the property owner to the purchaser secured by a lien on the property. *See id.* at *5. Further, the court found that the creditor is not precluded from relying on § 511 to protect its interest rate because it is not a governmental unit; instead, the creditor is precluded because it does not hold a tax claim under New Jersey law. *See id.* The court also rejected the creditor's contention that because a tax sale certificate holder in New Jersey succeeds to the lien interest of the municipality and is entitled to

the same rights that a municipality could exercise, including the right to foreclose, the private lienholder stands in the shoes of the municipality and holds a tax claim. *See id.* at *5-*7. The court found that neither the New Jersey statutory references nor the case law relied upon by the creditor change the premise that the tax sale certificate holder paid the municipal taxes due to acquire the lien. *See id.* at *6, *7. The court next rejected the creditor's reliance on case law from Ohio and Texas,[3] noting that both Ohio Rev. Code § 5721.32(E) and Tex. Tax Code § 32.06(a-2) refer to a transfer of the lien to the certificate holder/purchaser, whereas the equivalent statutory language does not exist under New Jersey law. *See Burch,* 2010 WL 2889520 at *7,*8. Finally, the court rejected the creditor's resort to public policy arguments, finding that it is not within the province of the court to allow policy arguments to determine the outcome of an issue that is resolved by enacted statute. *See id.* at *9. Having ruled that the creditor was not entitled to the interest rate it would have received under New Jersey law as prescribed in § 511(a), the court determined that the formula adopted by the plurality in *Till* governs the calculation of the interest rate to be applied to the creditor's claim. *See id.*

    C. *In re Kopec* (2012)

    *In re Kopec*, 473 B.R. 597, 603 (Bankr. D.N.J. 2012) (Ferguson, J.) held that the holder of a tax sale certificate has a "tax claim" for purposes of § 511 and the interest rate in a Chapter 13 plan must be determined under New Jersey law. In *Kopec*, the creditor purchased a Certificate of Sale for Unpaid Municipal Liens for the debtor's real property. *Id.* at 598. The parties had agreed that the amount due as of the petition date was $64,457.59; with the amount of the claim no longer disputed, the sole issue before the court was the appropriate interest rate over the life of the plan. *See id.* at 598-99.

---

[3] *See Cortner,* 400 B.R. at 612–13; *In re Sheffield,* 390 B.R. 302, 303–04 (Bankr. S.D. Tex. 2008); *In re Soto,* 410 B.R. 761, 764 (Bankr. S.D. Tex. 2009).

The court determined that three primary concerns compelled the court to reach a different conclusion from *Burch*: 1) statutory provisions that indicate that a municipality's tax claim is not extinguished upon the sale of the certificate; 2) the conundrum of having a lien without any concomitant debt; and 3) principles of statutory interpretation. *Kopec*, 473 B.R. at 601. First, the court considered N.J.S.A. § 54:5-43, which governs refunds to purchasers when a tax sale is set aside, and N.J.S.A. § 54:4-67(c), which defines delinquency. *See Kopec*, 473 B.R. at 601. N.J.S.A. § 54:5-43 provides that:

> If the sale shall be set aside, the municipality shall refund to the purchaser the price paid by him on the sale, with lawful interest, upon his assigning to the municipality the certificate of sale and *all his interest in the tax*, assessment or other charges and in the municipal lien therefore[…].

*Kopec*, 473 B.R. at 601 (internal citations omitted). The court found that that language strongly suggests that the claim of the holder of a tax sale certificate is based on the underlying tax. *Id.* The second provision, N.J.S.A. § 54:4-67(c), states that:

> "Delinquency" means the sum of all taxes and municipal charges due on a given parcel of property covering any number of quarters or years. The property shall remain delinquent, as defined herein, until such time as all unpaid taxes, including subsequent taxes and liens, together with interest thereon shall have been fully paid and satisfied. The delinquency shall remain notwithstanding the issuance of a certificate of sale pursuant to R.S. 54:5-32 and R.S. 54:5-46, the payment of delinquent tax by the purchaser of the total property tax levy pursuant to section 16 of P.L. 1997, c. 99 (C. 54:5-113.5) and for the purposes of satisfying the requirements for filing any appeal with the county board of taxation or the State Tax Court.

*Kopec*, 473 B.R. at 601-02 (internal citations omitted). The court found that those two statutory provisions read together compelled the conclusion that the tax debt is not fully extinguished upon the sale of the tax certificate. *Id.* at 602.

As to the second issue, the court was "uncomfortable with the contrived position that a brand new debt, completely divorced from the underlying tax debt, arises upon the purchase of a tax sale certificate." *Id.* The court noted that the property owner is not obligated to repay the

28

purchaser of a tax sale certificate. *See id.* The court found that unlike a foreclosure sale resulting from the failure to pay a mortgage, no deficiency claim arises if the property owner fails to redeem; therefore it was "inaccurate to state the debt underlying the lien represented by the municipal tax sale certificate is 'the obligation of the property owner to repay the purchaser.'" *See id.* at 602. The court thus concluded that the debt accompanying the tax sale certificate is the original tax debt and the "'lien interest of the taxing authority' would certainly appear to be a 'tax claim.'" *See id.*

Third, the court found that principles of statutory construction support a finding that the holder of a tax sale certificate has a "tax claim." *Id.* The court found it significant that § 511 contains not only the term "tax claim," but also "administrative expense tax." *Id.* at 603. The court concluded that the scope of a "tax claim" and a "tax" are different, that the term "tax claim" is more inclusive than the term "tax," and that this conclusion is buttressed by the use of the term "creditor" in § 511 rather than "governmental unit." *Id.* Thus, if Congress had desired the term "tax claim" to be limited to a claim for taxes owed to a taxing authority (or those subrogated to those rights), there is no reason to use to the term "creditor" instead of "governmental unit." *See id.* Finally, the court noted that this ruling was consistent with the New Jersey legislature's directive that the Tax Sale Law is to "'be liberally construed to effectuate the remedial objectives thereof.'" *Id.* (quoting N.J.S.A. § 54:5-3). Therefore, the court held that a tax sale certificate holder has a "tax claim" for the purposes of § 511, and the interest rate in a Chapter 13 plan must be determined under New Jersey Law. *Kopec*, 473 B.R. at 603.

D. *In re Curry* (2013)

Most recently, *In re Curry*, 493 B.R. 447, 453 (Bankr. D.N.J. 2013) (Winfield, J.) held that the purchaser of a tax sale certificate holds a "tax claim" pursuant to § 511 of the Bankruptcy Code and is entitled to the interest on the claim as provided under applicable non-bankruptcy law. In *Curry*, the creditor filed a secured proof of claim in the debtor's Chapter 13 case in the amount of $43,553.27, citing "unpaid delinquent taxes" as a basis for the claim and asserting an interest rate of 18%. *Id.* at 448. The debtor's amended Chapter 13 Plan proposed to pay the claim in the amount of $43,400.28 at an interest rate of 4.25%, which was 3.25% prime rate plus 1%. *Id.* at 449.

As a preliminary matter, the court gave significant weight to the fact that in requiring that the interest payable on a tax be calculated at a rate determined by non-bankruptcy law, Congress conferred the benefit on creditors rather than solely governmental units. *Id.* at 450. The court found that that strongly suggests that Congress intended that a tax claim could be held by a third party. *Id.*

Next, the court found it necessary to look to the New Jersey Tax Sale Law to determine whether the tax sale certificate purchaser holds a tax claim. *Id.* The court was unable to determine how a lien continues to exist if the underlying debt has been satisfied, despite conceding that there was no explicit language in any section of the Tax Sale Law that assigns the tax debt and the tax lien to the tax sale certificate purchaser. *Id.* at 450. The court noted that New Jersey state courts construing the Tax Sale Law had determined that the lien interest of the taxing authority is conveyed to the purchaser of a tax sale certificate. *Id.* (citing *Savage*, 355 N.J. Super. at 436; *Block 447A, Lot 10*, 228 N.J. Super. at 4). The court found that, as the purpose of a lien is to secure payment of a debt, logically the debt owed to the taxing authority is conveyed to the purchaser of a tax sale certificate as well. *Curry*, 493 B.R. at 450. The court also found

30

support in the underlying purpose of the statute and the specific provision by which its purpose is met, noting that the Tax Sale Law is remedial legislation that should "'be liberally construed to effectuate the remedial objectives thereof.'" *Id.* at 451 (quoting N.J.S.A. § 54:5-3).

Further, the court observed that the tax authority maintains an active role in the sale process through its conclusion either by redemption or foreclosure. *Curry*, 493 B.R. at 451. The court concluded that "th[os]e provisions of the Tax Sale Law ma[d]e it evident that the process created by the statute has but one goal--the collection of taxes," whether through redemption of the tax sale certificate or foreclosure by the municipality or a third party. *See id.* Additionally, the court agreed with *Kopec* that N.J.S.A. § 54:4-67(c)'s definition of a tax delinquency supports the conclusion that, by virtue of holding the tax sale certificate and satisfying delinquent taxes in subsequent years, the creditor held a tax claim under § 511. *See Curry*, 493 B.R. at 451-52.

The court rejected the creditor's assertion that the creditor was entitled to the tax statute's default interest rate of 18% on the Tax Sale Certificate related to 2009 taxes. *Id.* The court found that the Tax Sale Certificate explicitly provided that the sale was subject to redemption on repayment of the amount of sale, together with interest at the rate of 0.00% per annum on the date of sale, plus costs permitted by statute, which the court found to comport with N.J.S.A. § 54:5-58. *See id.* Therefore, the court concluded that the proof of claim must be amended to reflect an interest rate of 0% on the Tax Sale Certificate. *Id.* Finding that the creditor held a tax claim under § 511 based on the tax sale certificate and payment of the subsequent taxes and charges from 2010 to 2012, the court concluded that rates prescribed in N.J.S.A. § 54:4-67 were the rates the creditor may apply to her claim.[4] *See id.* at 453.

---

[4] On October 2, 2013, the court issued a letter opinion in *Curry* "conclud[ing] that N.J.S.A. § 54:4-67 must be applied separately to each tax year, so that for each year's delinquency, the rate is not more than 8% on the first $1,500 of that year's delinquency and 18% on any amount in excess of $1,500." 2013 WL 5493415, at *2 (Bankr. D.N.J. Oct. 2, 2013).

The first question is whether the municipality's tax claim is extinguished upon the sale of the certificate. Contrary to Debtor's assertion, this Court finds that under New Jersey law, the original tax claim is not extinguished.

This Court does not find that the New Jersey Supreme Court's discussion of the New Jersey Tax Sale Law in *Simon* answers that question. There, the court dealt with whether the Tax Sale Law prohibits a third-party investor from redeeming a tax sale certificate after the filing of a foreclosure action and examined the statute for its delineation of the competing rights of tax certificate holders and property owners. *See Simon*, 189 N.J. at 311, 318.

The court explained that when property taxes or assessments remain unpaid for a period of time, a municipality is granted "a continuous lien on the land" for the delinquent amount as well as for "all subsequent taxes, interest, penalties and costs of collection." *Id.* (citing N.J.S.A. § 54:5–6). The Tax Sale Law converts that lien into a stream of revenue by encouraging the purchase of tax certificates on tax-dormant properties. *Simon*, 189 N.J. at 318. The court continued:

> A tax sale certificate validates the amount of unpaid taxes and assessments on the property described in the certificate. *N.J.S.A.* 54:5–11 to –13. The sale of a tax certificate is a conditional conveyance of the property to the purchaser, subject to a person with an interest in the property having the right to redeem the certificate, as prescribed by statute. *See N.J.S.A.* 54:5–31 to –32, –46. Unless redemption occurs, however, a purchaser who forecloses on the tax certificate becomes the owner of the property in fee simple. *N.J.S.A.* 54:5–87.

*Simon*, 189 N.J. at 318. The court found that "[t]he certificate holder is entitled to reimbursement for all taxes and assessments paid on the property, as well as accrued interest and related costs, if the owner redeems the certificate." *Id.* at 319 (citing N.J.S.A. §§ 54:5–58 to – 60). The court ultimately held that after the filing of a tax sale foreclosure action, a third-party investor who acquires a property interest subject to the action must intervene to establish that he

has offered more than nominal consideration for the interest. *Simon*, 189 N.J. at 338. With court approval, the investor may then redeem or assist in the redemption of the tax certificate. *Id.*

Although *Simon*'s general discussion of the tax sale certificate process is informative, the court there analyzed "the competing rights of tax certificate holders and property owners" under the Tax Sale Law. *Id.* at 318. Whether a tax sale certificate holder has a "tax claim" under § 511 involves instead a comparison of the rights of the tax sale certificate holder and the transferring municipality, which the court in *Simon* does not address.

Similarly, this Court is not persuaded that the tax court's ruling in *Ramos* renders the definition of tax delinquency in N.J.S.A. § 54:4–67(c) unusable in our analysis of whether the original tax debt is extinguished.

In *Ramos*, the municipality conducted a tax sale based on a delinquency on the subject property. 19 N.J. Tax at 100. A third party purchased the tax sale certificate for an amount which included the principal amount of the delinquency plus interest and sale costs, and then paid the taxes due after the period covered by the tax sale certificate. *See id.* Therefore, as of the date of the filing of homeowner's complaint, the municipality had received "all taxes or any installments thereof then due and payable" as required by N.J.S.A. § 54:51A-1b in order for the tax court to review a judgment of a county tax board. *See id.* at 100-01. However, the municipality asserted that notwithstanding its receipt of those amounts, under N.J.S.A. § 54:4-67, taxes remained delinquent for tax appeal purposes. *See id.* at 101. The homeowner then sought a judgment declaring this definition unconstitutional as applied to tax appeals, asserting that it effects a denial of due process and equal protection under the Fourteenth Amendment to the United States Constitution. *See id.*

In determining that these provisions violated procedural due process by unjustifiably failing to provide a pre-deprivation remedy to the property interest holder, the tax court observed:

> The Tax Sale Provisions preclude the filing of an appeal as long as a tax sale certificate remains outstanding. Consequently, once a tax sale certificate has been sold to a third party, a tax appeal may be filed only if the property owner, or another party authorized by N.J.S.A. 54:5–54, redeems the certificate. The municipal tax collector receives the redemption payment required by statute and is obligated to remit "all redemption monies" to the purchaser of the certificate being redeemed. N.J.S.A. 54:5–57. The municipality, therefore, does not retain any portion of the redemption payment, and the municipal treasury receives no benefit whatsoever from the redemption.

*Ramos*, 19 N.J. Tax at 110 (citing *Freehold Office Park*, 12 N.J. Tax at 442).[5] The tax court continued that when a tax sale certificate is sold to a third party, the right of redemption continues for a period of two years after the date of the sale pursuant to N.J.S.A. §§ 54:5–54 and –77. *See Ramos*, 19 N.J. Tax at 110-11.

Notably, the tax court found that "[d]uring this two year period, the holder of the certificate may not foreclose the right of redemption. N.J.S.A. 54:5–86. (Presumably, such a foreclosure would eliminate the 'delinquency' resulting from the outstanding certificate, *although the language of N.J.S.A. 54:4–67 does not compel such a result*.)" *See Ramos*, 19 N.J. Tax at 111 (emphasis added).

The tax court specifically found that the Tax Sale Provisions were severable from N.J.S.A. § 54:4-67. *See Ramos*, 19 N.J. Tax at 114 (citing N.J.S.A. § 1:1-10). In addition, and as noted at the October 10, 2013 hearing in the instant matter, the legislature has neither stricken

---

[5] The tax court in *Freehold Office Park*, to which *Ramos* cites, had also addressed whether the sale of a tax certificate sale satisfies the Tax Sale Law's appeal requirements, and in particular, N.J.S.A. § 54:3-27. *See Freehold Office Park*, 12 N.J. Tax at 441. The municipality had argued under N.J.S.A. § 54:5-42 that the taxes had not been paid because the lien of the taxes remains in existence and is merely transferred or assigned to a third party. *See id.* The tax court responded that "[t]he answer to this argument is that the municipality has, in fact, received its tax revenues from the assessment placed on the subject property[....]" *Id.* Following *Freehold Office Park*, 54:4-67 was amended to include the present definition of "delinquency" and made explicit the effect of a tax sale certificate on appeal eligibility.

nor amended N.J.S.A. § 54:4–67 since *Ramos* was decided. Therefore, this Court may still consider N.J.S.A. § 54:4–67(c)'s provision that "[t]he delinquency shall remain notwithstanding the issuance of a certificate of sale" as applied to the issue in this case.

Second, this Court shares *Kopec*'s concern that Debtor's position suffers from "the conundrum of having a lien without any concomitant debt." *See Kopec*, 473 B.R. at 601. As *Kopec* observed, "it is inaccurate to state that the debt underlying the lien represented by the municipal tax sale certificate is 'the obligation of the property owner to repay the purchaser'" because while the property owner may choose to redeem the tax sale certificate to save the home from foreclosure, the property owner is not statutorily obligated to redeem. *See id.* at 602. *Kopec* thus concluded, and this Court agrees, that if the debt is not the redemption amount, the debt must be the original tax debt. *See id.*

The analyses in *Kopec* and *Curry* are persuasive. Both courts found that N.J.S.A. § 54:4-67(c)'s language that "[t]he delinquency shall remain notwithstanding the issuance of a certificate of sale" supports the conclusion that a tax certificate holder's claim is based on the underlying municipal tax. *See Kopec*, 473 B.R. at 601; *Curry*, 493 B.R. at 451. In addition, both courts found support for that conclusion in N.J.S.A. §54:5-43, which provides that:

> If the sale shall be set aside, the municipality shall refund to the purchaser the price paid by him on the sale, with lawful interest, upon his assigning to the municipality the certificate of sale *and all his interest in the tax*, assessment or other charges and in the municipal lien therefor [....]

N.J.S.A. §54:5-43 (emphasis added); *see Kopec*, 473 B.R. at 601; *Curry*, 493 B.R. at 451.

Therefore, this Court finds that City Life, as a tax sale certificate holder, has a "tax claim" under 11 U.S.C. § 511(a) of the Bankruptcy Code and is therefore entitled to the statutorily-prescribed interest rate on that claim pursuant to N.J.S.A. § 54:4-67(a).

35

CONCLUSION

For the foregoing reasons, Debtor's Motion To Set Post-Petition Interest Rate on City

Life's Tax Sale Certificate is DENIED.[6]


Dated: April 4, 2014

_Rosemary Gambardella_
ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE

---

[6] An Order Denying Debtor's Proposed Interest Rate with Respect to the Secured Claim of City Life was entered in this matter on January 2, 2014.